```
┌─────────────────────────────────┐
│    FILED & JUDGMENT ENTERED      │
│         Steven T. Salata         │
│  ┌───────────────────────────┐   │
│  │                           │   │
│  │        Sep 03 2015        │   │
│  │                           │   │
│  └───────────────────────────┘   │
│                                  │
│     Clerk, U.S. Bankruptcy Court │
│   Western District of North Carolina │
└─────────────────────────────────┘
```

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **Redf Marketing, LLC** | ) | |
| | ) | |
| | ) | **Case No. 12-32462** |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | |
| **The Finley Group,** *liquidating agent* | ) | |
| *for Redf Marketing, LLC* | ) | |
| | ) | |
| Plaintiff, | ) | **Adversary Proceeding** |
| | ) | **No. 14-03145** |
| v. | ) | |
| | ) | |
| **Working Media Group Atlanta, LLC** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| **The Finley Group,** *liquidating agent* | ) | |
| *for Redf Marketing, LLC* | ) | |
| | ) | |
| Plaintiff, | ) | **Adversary Proceeding** |
| | ) | **No. 14-03252** |
| v. | ) | |
| | ) | |
| **City of Clare, Michigan** | ) | |
| | ) | |
| Defendant. | ) | |

1

The Finley Group, *liquidating agent*    )
    *for Redf Marketing, LLC*    )
    )
    Plaintiff,    )        **Adversary Proceeding**
    )        **No. 14-03254**
v.    )
    )
**Fifth Third Bank**    )
    *dba* **Fifth Third Bank, Inc.**    )
    )
    Defendant,    )
    Third-Party Plaintiff,    )
    )
v.    )
    )
**Daniel J. Roselli,**    )
**222 South Church Street, LLC,**    )
**Novare Group Holdings, LLC,**    )
**Anne L. Bradley,**    )
**Packard Place Properties, LLC,**    )
**Anne L. Bradley, C.P.A., P.A.**    )
**Sara G. Roselli**    )
    )
    Third-Party Defendants,    )
    )
The Finley Group, *liquidating agent*    )
    *for Redf Marketing, LLC*    )
    )
    Plaintiff,    )        **Adversary Proceeding**
    )        **No. 14-03259**
v.    )
    )
**521 Partners, LLC,**    )
**Red Ventures, LLC**    )
    )
    Defendants.    )

The Finley Group, *liquidating agent* )
  *for Redf Marketing, LLC* )
         )
   Plaintiff,     )   **Adversary Proceeding**
         )   **No. 14-03261**
v.          )
         )
CB Richard Ellis Inc.,    )
222 South Church Street, LLC  )
         )
   Defendants.    )
_____)

The Finley Group, *liquidating agent* )
  *for Redf Marketing, LLC* )
         )
   Plaintiff,     )   **Adversary Proceeding**
         )   **No. 14-03262**
v.          )
         )
Mecklenburg County    )
         )
   Defendant.     )
_____)

The Finley Group, *liquidating agent* )
  *for Redf Marketing, LLC* )
         )
   Plaintiff,     )   **Adversary Proceeding**
         )   **No. 14-03263**
v.          )
         )
222 South Church Street, LLC,  )
Novare Group Holdings, LLC  )
         )
   Defendants,    )
    Third-Party Plaintiffs, )
         )
v.          )
         )
Anne L. Bradley, CPA, P.A.,  )
Anne L. Bradley,     )
Daniel J Roselli,     )
Sara Garces Roselli,    )
Packard Place Properties, LLC,  )
         )
   Third-Party Defendants, )
_____)

The Finley Group, *liquidating agent* )
   *for Redf Marketing, LLC* )
                )
    **Plaintiff,** )     **Adversary Proceeding**
                )     **No. 14-03265**
**v.** )
                )
**Vision Brokerage Group, LLC** )
                )
    **Defendant.** )

## ORDER

In these eight related adversary proceedings, plaintiff seeks to avoid upward of $1,200,000 in prepetition transfers of the debtor's property under Bankruptcy Code sections 547 and 548, as well as N.C.G.S. § 39-23 and to recover these monies per Code section 550.

The numerous defendants and third-party defendants have responded to those complaints with a barrage of motions seeking to: (1) revoke confirmation of the consummated Chapter 11 plan; (2) determine the limits of this bankruptcy court's power to enter final rulings in these actions; (3) dismiss the action(s) or some parts thereof; (4) alternatively, to abstain from hearing these disputes; and (5) to consolidate five of the eight adversary proceedings for pretrial purposes.

By the hearing date, the parties were in agreement as to some of these matters. As to the motions still in dispute, and having carefully considered the parties' arguments, it is the opinion of this bankruptcy court that the various motions seeking to revoke confirmation of the Chapter 11 plan in this case are without merit to say nothing of being untimely and procedurally defective. They are denied.

Defendants' motions to dismiss plaintiff's primary claims against them under Rule 7012 and seeking summary judgment under Rule 7056 are also ill founded and are

denied.[1]

As for the third-party defendants' motions seeking dismissal of the third-party claims for lack of subject matter jurisdiction, abstention, or severance into freestanding diversity actions, the undersigned U.S. Bankruptcy Judge believes that bankruptcy subject matter jurisdiction is lacking and the third-party complaints should be dismissed. Being case dispositive, this particular ruling is simply a recommendation to the U.S. District Court.

### Facts leading to plan confirmation and consummation

Debtor operated an advertising and marketing agency in Charlotte, North Carolina and was wholly owned by Daniel and Sara Roselli. On May 18, 2010, debtor, the Rosellis, and others were sued by Bridgetree *et al.* in U.S. District Court for misappropriation of trade secrets and conversion. *See Bridgetree, Inc. et al. v. Redf Marketing, LLC, et al.*, Case No. 10-CV-00228. The litigation was both contentious and protracted. In August 2012, after a jury trial before the Honorable Frank D. Whitney, Chief U.S. District Judge, the jury returned a verdict against debtor and various others on the misappropriation of trade secrets claim for $678,292 as well as a verdict against debtor and another defendant on the conversion claim for $3,500,000. Judgment was entered accordingly.

Bridgetree then attempted to force debtor into bankruptcy by an involuntary petition filed October 12, 2012. Hoping to reorganize its business and continue to litigate with Bridgetree on appeal, debtor acceded. It entered bankruptcy and converted its case

---

[1] To the extent rulings in this order are case dispositive, any such dispositions should be treated as recommendations to the District Court pursuant to its order on Defendant's Motion to Withdraw the Reference entered at Docket No. 3:15-cv-00029-FDW.

to Chapter 11 on October 29, 2012.  The reorganization attempt failed, however.

Between the injunction imposed against it in District Court and the loss of a primary

customer, debtor was no longer viable.  After an abortive attempt to dismiss the case,

debtor proposed a liquidating Chapter 11 plan.

Bridgetree and Branch Bank & Trust were heavily involved in the Chapter 11

case,[2] undertaking a level of monitoring and negotiation with debtor similar to what a

creditor committee would provide.[3]  Bank of America, debtor's secured lender, was

similarly active in the case.[4]  The Bankruptcy Administrator's Office was engaged in the

Chapter 11 case as well.  In short, the proceedings were under constant scrutiny by a

number of entities with a tremendous amount at stake, not to mention this Court.

Debtor's proposed plan faced intense opposition from these adverse parties.

Objections to the Disclosure Statement and Plan were filed by each.  After lengthy

negotiations between the parties and several continuances, an eleventh-hour compromise

was reached.  This accord resulted in a consensual plan that received *unanimous* approval

by the voting creditors.  One of the features of that consensual plan was a release in favor

of debtor's principals, the Rossellis.

The amended plan was confirmed on April 29, 2013 and since consummated.  Per

that consensual plan, plaintiff was appointed liquidating agent.  As contemplated by the

---

[2] BB&T filed an unsecured claim against debtor for $6,384,297.50.

[3] The Rossellis were likewise represented by counsel and actively involved in the case, both on behalf of debtor and as individuals.

[4] Bank of America filed a secured claim against debtor for $1,108,315.43.

plan, plaintiff investigated debtor's property transfers and filed a number of lawsuits,

including those referenced herein.

### Facts regarding the Packard Place transaction

Most of the claims in these adversary proceedings arise from the purchase and

financing of a Charlotte office building known as Packard Place by Red City Properties,

LLC (Red City), an affiliate of debtor.[5]  Red City bought Packard Place from 222 South

Church Street, LLC less than two years before the initiation of this bankruptcy.  Debtor

supplied a substantial amount of the money by which Red City bought Packard Place.

Specifically, and as alleged by plaintiff,[6] the Rosellis owned and controlled Red

City.  Red City borrowed $6,480,000 from BB&T that was structured as a bond to

purchase Packard Place.  Debtor guaranteed the loan to Red City.  Red City was required

to pay in excess of $3,000,000 to Fifth Third Bank at the closing of the BB&T Loan and

the acquisition of Packard Place to satisfy the seller's obligations to Fifth Third.  Debtor

engaged the law firm of K&L Gates (KLG) to represent it, not Red City, in connection

with the Packard Place closing.

On October 1, 2010, debtor wired $100,000 from its operating account at

Wachovia Bank, N.A. to the trust account of Barrister's Title to serve as an earnest

money deposit in the Packard Place transaction.  On December 15, 2010, debtor wired

---

[5] The litigation against Working Media Group Atlantic, LLC seeks to recover an
unrelated preferential transfer (Case 14-3145).  The suit against the City of Clare
Michigan relates to payments made by debtor for debts owed by one of its principals
(Case 14-3252).  The proceedings against 521 Partners, LLC and Red Ventures, LLC
involved the purchase of property unrelated to Packard Place (Case 14-03259).  These
three cases are not subject to the consolidation motions discussed below.

[6] As these matters are before the Court on a motion to dismiss, the facts of the complaint
are presumed to be true.

$1,093,000 from its operating account to the KLG Trust Account.  Debtor then wired an

additional $12,954.38 from its operating account to the KLG Trust Account on December

16, 2010.  On December 17, 2010, the $100,000 earnest money deposit that had been

deposited into the Barrister's Title trust account was wired to the KLG Trust Account.

At the closing of the Packard Place transaction, KLG wired the sum of up to

$1,205,954.38 of debtor's funds from the KLG Trust Account to Fifth Third to satisfy the

seller's obligations to Fifth Third and to allow Red City and the Rosellis to acquire

Packard Place.  The debtor neither owned any interest in Red City nor received any

interest in Packard Place.

### Resulting adversary proceedings and current motions

In September and October 2014, plaintiff filed a series of adversary proceedings

against defendants to recover the funds provided by debtor in the Packard Place

transaction as fraudulent transfers.[7]  Defendants attempted to defray their potential

liability through third-party suits against others involved in the transaction either by

making indemnity type claims or asserting that the third-parties, rather than defendants,

were initial transferees.

Defendants now move to dismiss the actions, all asserting nearly identical attacks

against both the individual adversary proceedings and the confirmed plan itself.  For their

part, the third-party defendants move dismiss for lack of jurisdiction and for the reasons

asserted by defendants.  Additionally, several parties move under Local Rule 7007-1(b)

---

[7] Working Media Group Atlantic, LLC, 521 Partners, LLC, Red Ventures, LLC, and the
City of Clare Michigan were not involved in the Packard Place transaction but raise
similar arguments in their motions.

for a determination on whether the adversary proceedings are core or otherwise subject to final order by this Court.

A joint hearing on all defendants' and third-party defendants' motions was held on April 20, 2015. The parties agreed to a combined record.

By the hearing date, the various consolidation motions in the adversary proceedings involving the Packard Place transaction were not opposed, and this relief is granted for pretrial purposes,[8] including discovery and dispositive motions.[9] For clarity, the parties' future filings should continue to be docketed in the original adversary proceedings. Rulings, such as this, and other filings relating to all of the consolidated proceedings should be docketed in each of the adversary proceedings.

Similarly, by the hearing date, the parties were in agreement that the question of which court, U.S. District Court or this bankruptcy court, should make final decisions in the causes has been resolved by Judge Whitney's ruling in Case 14-3263.[10] It is agreed that this ruling is applicable by extension to all of the consolidated adversary proceedings. Thus, we need not tarry over the metaphysical questions posed by *Stern* or its progeny. Per Judge Whitney's ruling, pretrial proceedings will be conducted in this bankruptcy court; the trials of these proceedings will be conducted in U.S. District Court. Thus, the motions seeking to determine whether these proceedings are "core" or

---

[8] The decision of whether to consolidate the proceedings for trial will be left for the United States District Court.

[9] Cases 14-3254, 14-3261, 14-3262, 14-3263, 14-3265 are herby consolidated for pretrial discovery and pretrial motions subject to the provisions explained in this order. Granting the motions to consolidate moots 222 South Church Street's Motion to Intervene (Doc. 13) in Case 14-3262. Therefore, it is denied.

[10] District Court Docket No. 3:15-cv-00029-FDW.

otherwise subject to final order of this Bankruptcy Court are denied as moot.

Because of the number of parties involved and the interrelated nature of their arguments, this order is meant to resolve all the matters addressed at the April 20, 2015 hearing.

## Discussion

### I.    Revocation of the confirmation order

Defendants first argue that the confirmed and consummated Chapter 11 plan should be revoked (1) because the fraudulent transfer defendants did not receive notice of the proposed plan and (2) because the fraudulent transfer defendants were not afforded the opportunity to participate in the confirmation proceedings.  According to defendants, they had standing to participate in the plan pursuant to their status as *potential* claimants under 11 U.S.C. § 502(h) ("A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.").

As an initial procedural barrier, 11 U.S.C. § 1144 allows a party in interest to request revocation of a confirmation order procured by fraud, but such requests must be made "before 180 days after the date of the entry of the order of confirmation."  The order of entry of confirmation was entered on April 29, 2013.  Apart from a lack of evidence pointing to fraud, these challenges were filed in November 2014, well outside the 180-day window permitted by 11 U.S.C. § 1144.  Additionally, a motion under section 1144 would need to be filed in the base bankruptcy case and noticed case wide, neither of which occurred in these matters.  Moreover, as will be more fully explained,

defendants had no standing to participate in confirmation and are not parties in interest

entitled to seek relief under 11 U.S.C. § 1144.

Even without the statutory and procedural deficiencies, defendants' reading of 11

U.S.C. § 502(h) to somehow afford *per se* standing to potential adversary proceeding

defendants to participate in plan confirmation is misguided.  Subsection 502(h) claims

arise as a result of recovery of property and act to preserve an avoidance action

defendant's right to pursue claims as a creditor after disgorgement.  *In re Tronox Inc.*,

503 B.R. 239, 330 (Bankr. S.D.N.Y. 2013) ("It is applied routinely in connection with the

reinstatement of the claim of a creditor whose antecedent debt was paid and then avoided

by the debtor or trustee as a preference.").  "This is not to say that every person who is

the recipient of a fraudulent transfer is entitled to a claim against the estate.  For if the

transferee gave no consideration for the transfer, there is no underlying debt."  *In re Best*

*Products Co.,* 168 B.R. 35, 58 (Bankr. S.D.N.Y. 1994).  Thus, until the questioned

transactions are avoided and the consideration recovered, there is no claim under §

502(h).

With the exception of the Working Media Group action, plaintiff seeks recovery

of fraudulent transfers, not preferences, for transactions related to debtor's payment of

expenses owed by either Red City or the Rosellis.  As pled, the majority of defendants

were not creditors of the debtor, the payments were not made on debts owed by the

debtor, and defendants would therefore never have viable claims under 11 U.S.C. §

502(h).

More to the point, defendants have vigorously maintained that they owe nothing,

and no recovery or disgorgement has been made.  In short, they are transfer avoidance

defendants.  Consequently, defendants were neither entitled to notice of the bankruptcy proceedings nor entitled to vote at confirmation.  *In re Am. Solar King Corp.*, 90 B.R. 808, 828 (Bankr. W.D. Tex. 1988) ("[T]he targets of actions to recover preferential transfers may participate in the balloting only after they have surrendered the preference to the estate." (citations omitted)); *In re S. Indus. Banking Corp.*, 66 B.R. 349, 361 (Bankr. E.D. Tenn. 1986) ("Formal notice of bankruptcy proceedings to potential preference defendants has never been customary and perhaps never considered previous to this case.  This court is confident that neither Congress nor the Bankruptcy Rules Committee envisioned formal notice of bankruptcy proceedings to transferees of avoidable transfers or their participation in reorganization proceedings until disgorgement of the avoidable transfer.").  Otherwise, in order to avoid transfer liability, potential 548 defendants would have an incentive and the means to thwart plan confirmation to the detriment of actual creditors.

On a final note, fairness and equity undergird many of the arguments put forth by defendants and third-party defendants that confirmation should be revoked.  According to the plan opponents, plaintiff should have focused on the Rosellis and not the unknowing, "innocent" defendants.  Defendants say the release in favor of the Rosellis inequitably shifts the burden of the fraudulent transfers.  But, as will be discussed in greater detail below, in bankruptcy avoidance actions, "the [p]laintiff has discretion in his choice of defendants."  *Bakst v. United States (In re Kane & Kane)*, 475 B.R. 251, 265 (Bankr. S.D. Fla. 2012) (citation omitted).  This equitable argument and "protest that 'it just isn't fair' to saddle [defendants] with judgment" has gained little, if any, traction in courts that have previously taken up the issue.  *Leonard v. First Commercial Mort. Co. (In re Circuit*

*All., Inc.)*, 228 B.R. 225, 236 (Bankr. D. Minn. 1998) ("The Defendant is not undeserving

of sympathy; it stands alone here, strictly liable, while the party or parties who gained in-

hand benefit from the avoided transfers were not subjected to the same onus.

Unfortunately for the Defendant, however, it has no relief from the application of §

550(a) at the Plaintiff's behest . . . .  The earlier courts that construed § 550 slathered

'equity' into the theory of their construction, and proposed an escape from liability by

giving the benefit of generalized considerations of 'fairness' to parties deemed relatively

innocent in a chain of transfers.  The developing rule, however, properly rejects this

approach-on the ground that assuming equitable power to override a clear statutory

imposition of liability could leave judicially-carved exceptions swallowing the legislative

branch's rule." (citations omitted)).

Beyond a total lack of support in the Bankruptcy Code for revoking the plan, even

if the Court was willing to peel back the curtain and consider the equities, the scales still

weigh heavily in favor of the plan proponents.  While defendants suggest the releases

were the product of fraud and self-dealing, the facts do not yield that conclusion.  As was

more fully detailed before, this plan was the result of intensive negotiations between

debtor and a group of extremely active, suspicious creditors, was not arrived upon easily,

and was confirmed by a unanimous vote.  Given the lengthy and contentious District

Court litigation as well as the events leading to the consensual plan, the voting creditors

were certainly aware of any potential claims that could be brought against the Rosellis.

Those creditors were also cognizant of the Rosellis' limited resources and the dubious

prospects of recovery against them.  In the end, the creditors gave their unanimous

approval of the release.  Neither debtor, nor plaintiff, nor the Rosellis "tricked" anyone into approving this plan.

The plan is now consummated, and at this point, revocation may not even be possible under any set of circumstances.[11]  All involved in confirmation have acted on and relied upon the plan, as written, for over two years.  To revoke the plan now would do untold harm to those rightfully involved in confirmation, upset its painstakingly struck balance, ignore the votes of the unanimous creditor body, cause extreme prejudice to creditors and other innocent parties, and disturb the expectations and status quo solidified over the past two years.  Defendants' and third-party defendants' requests to revoke the confirmation order are therefore denied.

## II.      Estoppel

Defendants next assert that plaintiff should be both judicially and equitably estopped from pursuing avoidance actions based upon statements made by the *debtor* in its Chapter 11 disclosure statement.  According to defendants,

---

[11] The doctrine of equitable mootness likely bars the relief sought by the plan opponents at this late stage.  *Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 713 (4th Cir. 2011) ("We have recognized that [t]he doctrine of equitable mootness represents a pragmatic recognition by courts that reviewing a judgment may, after time has passed and the judgment has been implemented, prove impractical, imprudent, and therefore inequitable. In the bankruptcy context, a court may dismiss an appeal as equitably moot when it becomes impractical and imprudent to upset the plan of reorganization at [a] late date. We look to the following factors to determine whether an appeal should be dismissed because it is equitably moot: (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties." (alterations in original; citations and quotation marks omitted)).

> The Disclosure Statement assured interested parties that the ". . .
> Debtor is aware of no fraudulent conveyances that give rise to
> potential claims . . .", that ". . . the Debtor has not entered into any
> transactions with the actual intent to hinder, delay or defraud its
> creditors", and that "[t]he Debtor is unaware of any avoidance
> actions that it could pursue for the benefit of the Estate". After
> having lulled parties into approving their Release, it is now evident
> that the representations by the Rosellis were fabricated.

Defendants suggest that debtor's statements were relied upon by this Court and by

creditors during confirmation and should be imputed to the plaintiff to foreclose the

current litigation.

Turning first to judicial estoppel, North Carolina has adopted the approach set

forth by the Unites States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742

(2001). *See Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d 870, 888 (N.C. 2004). In that

case, the Supreme Court stated "that the purpose of the doctrine was to protect the

integrity of the judicial process by prohibiting parties from deliberately changing

positions according to the exigencies of the moment." *Whitacre*, 591 S.E.2d at 888

(quoting *New Hampshire*, 532 U.S. at 749, 750). The approach adopted by North

Carolina does not adhere to "inflexible prerequisites or an exhaustive formula," rather

courts are to consider three nonexclusive factors: (1) "a party's subsequent position must

be clearly inconsistent with its earlier position"; (2) "judicial acceptance of an

inconsistent position in a later proceeding might pose a threat to judicial integrity by

leading to inconsistent court determinations or the perception that either the first or the

second court was misled"; and (3) "whether the party seeking to assert an inconsistent

position would derive an unfair advantage or impose an unfair detriment on the opposing

party if not estopped." *Id.* at 888-89 (quoting, *inter alia*, *New Hampshire*, 532 U.S. at

750-51). The Court emphasized that "[a]dditional considerations may inform the

doctrine's application in specific factual contexts." *Id*. at 889 (quoting *New Hampshire*, 532 U.S. at 751).

"Equitable estoppel is closely related to judicial estoppel," *id.* at 881, and likewise "prevents one party from taking inconsistent positions in the same or different judicial proceedings," *Gore v. Myrtle/Mueller*, 653 S.E.2d 400, 405 (N.C. 2007) (citation and quotation marks omitted). As related to the party to be estopped, the essential elements of equitable estoppel are:

> (1) Conduct which amounts to a false representation or concealment of material facts, or at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts.

*Id*. The party seeking the protection of equitable estoppel must show their own "(1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially." *Id*.

Before delving into the estoppel question, it bears noting that defendants have parsed through the disclosure statement, selectively quoting phrases to their advantage. In fairness to plaintiff, the disclosure statement's full section on avoidance actions reads:

> The Debtor is unaware of any avoidance actions that it could pursue for the benefit of the Estate. The Debtor reviewed its payments to creditors within the 90-day period prior to its bankruptcy filing, but believes that any such payments were made in the ordinary course of business under § 547(c)(2) of the Bankruptcy Code, or subject to other defenses. Notwithstanding the foregoing, the Debtor has disclosed all such payments in an

Exhibit to Statement of Financial Affairs, No. 3(b), which was filed with Bankruptcy Court.

The Debtor also reviewed all payments to insiders that are creditors made within the one-year period preceding its bankruptcy filing, but believes that any such payments were made in the ordinary course of business under § 547(c)(2) of the Bankruptcy Code, or subject to other defenses. Notwithstanding the foregoing, the Debtor has disclosed all such payments in an Exhibit to Statement of Financial Affairs, No. 3(c), which was filed with Bankruptcy Court.

Similarly, the Debtor is aware of no fraudulent conveyances that give rise to potential claims. In the first instance, the Debtor is informed and believes that it was solvent at all times up until August 13, 2013. Moreover, the Debtor has not entered into any transactions with the actual intent to hinder, delay or defraud its creditors. Notwithstanding the foregoing, summaries of various transactions were attached to the Debtor's Statement of Financial Affairs when filed, and the Debtor's representative(s) were questioned on these issues by the Bankruptcy Administrator at the First Meeting of Creditors. Nor is the Debtor aware of any unauthorized post-petition transactions that are subject to avoidance and recovery, which could be used to fund distributions in this case.

Regardless of the foregoing, and except as otherwise provided in the Plan, the Liquidating Agent shall retain all rights and is authorized to commence and pursue, as the Liquidating Agent deems appropriate, any and all claims and Causes of Action, including, but not limited to, Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and Causes of Action specified in the Plan.

The disclosure statement provides further that "on the Effective Date of the Plan,

[plaintiff] . . . will . . . investigate and pursue Avoidance Action Claims."

Viewing the complete picture, including the actual language of the disclosure

statement and the protracted litigation that led to the unanimous confirmation of this plan,

it is clear that plaintiff should not be estopped from bringing these avoidance actions.

First, the disclosure statement never affirmatively states that avoidance actions do not

exist or are waived.  In fact, the disclosure statement makes clear that plaintiff retained

the right to bring such actions.  That language was subject to the intense scrutiny of

creditors.  The implication of the representations made in the disclosure statement were

clear to this Court, provided sufficient notice to parties in interest, and were in no way

fraudulent.

Moreover, much of the language to which defendants object are assertions of law:

whether avoidance actions exist.  And, "[t]he application of judicial estoppel cannot be

applied to an assertion of law."  *In re J.A. Jones, Inc.*, 361 B.R. 94, 105 (Bankr.

W.D.N.C. 2007) (citations omitted).  That being so, the element of both judicial and

equitable estoppel requiring a party to adopt an inconsistent position is lacking in these

matters.  Likewise, the application of estoppel to protect judicial integrity is unwarranted.

Second, because defendants were not entitled to participate in the confirmation

process, (see above) they cannot now assert that they relied on debtor's statements in the

disclosure statement to their detriment or that plaintiff has somehow gained an unfair

advantage.  Those entitled to rely on the plan engaged in exhaustive negotiations to reach

a compromise and have relied upon that agreement for two years.  Creditors Bank of

America and Bridgetree appeared at the hearing to voice their support for plaintiff's

positions in these matters.

Finally, defendants gloss over the fact that the statements made in the disclosure

statement were attributable to debtor, not the liquidating agent.  Instead, defendants

attempt to collapse the distinction in the two entities by pointing the finger at plaintiff's

attorneys who also represented debtor during confirmation.[12]  To be sure, privity may

bind one party to the statements made by a predecessor via estoppel.  *Whitacre*, 591

S.E.2d at 893.  In bringing these avoidance actions, however, plaintiff "is not asserting a

cause of action belonging to the debtor but asserting an action in a representative capacity

for general unsecured creditors."  *J.A. Jones*, 361 B.R. at 106. As such, there is no privity

between debtor and plaintiff as least so far as the current litigation is concerned

regardless of legal representation.  *Id.* at 105 ("Lastly, the use of judicial estoppel is

inappropriate in this case because the 'party to be estopped' would be the general body of

unsecured creditors, not the party that made the statement, which is the Debtor.

Certainly, Defendants have not identified any prior position or assertion by the

Committees that is inconsistent with the one they have taken in these proceedings.").

## III.     Failure to state a claim

Several defendants next assert that plaintiff has failed to state a claim for which

relief can be granted.  Primarily, defendants assert that plaintiff's allegations of debtor's

insolvency and the source of the alleged transfer are inadequate and that plaintiff failed to

plead fraud with particularity.  Both these arguments were fully briefed, argued, and

rejected by this Court in another adversary proceeding arising out of this bankruptcy,

*Finley Group v. North Carolina* (Case No. 14-03267, Doc. No. 12, March 10, 2015).

Because plaintiff used the same form complaint in all the adversary proceedings, the

analysis in the previous case applies in the current litigation.

Regarding insolvency and the source of the transferred funds, the Supreme Court

---

[12] From the Court's perspective, plaintiff's counsel's participation in confirmation as
debtor's counsel has created much of this unsightliness and perceived misrepresentation.
However, having pre-confirmation counsel later represent a liquidating trustee created by
a confirmed plan is not uncommon.

has made clear that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Plaintiff's complaints alleged that the funds paid out of the KLG Trust Account belonged to the debtor. While the nature of the account and legal implications that flow therefrom may prove otherwise, that is, at the very least, a question of fact and certainly not a determination to be made on a motion to dismiss where all factual allegation are taken as true.

As for insolvency, plaintiff pled financial figures that indicate debtor's debt exceeded its assets. Plaintiff further claimed that debtor was not paying its debts as they came due. These allegations and specific financial figures are more than a mere conclusory statement that debtor was insolvent.

If accepted as true, plaintiff's assertions state a facially plausible claim for relief. Accordingly, the defendants' contentions that plaintiff failed to meet the *Iqbal* and *Twombly* pleading requirements must fail.

Next, defendants argue that plaintiff's claim for fraud fails to meet the pleading requirements of Federal Rule of Civil Procedure 9(b), requiring that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake." Defendants' reliance on Rule 9 is misplaced. As recently explained by the

U.S. District Court in this judicial district, "a claim for fraudulent transfer involves no

allegations of fraud on the part of the defendant transferee, but only by the non-party

transferor." *Bell v. Disner*, No. 3:14CV91, 2014 WL 6978690, at *6 (W.D.N.C. Dec. 9,

2014). Thus, "where a complaint does not allege that the defendants themselves

committed fraudulent acts, Rule 8 applies," rather than the particularity requirement of

Rule 9(b). *Id*. Therefore, the defendants' motions on this issue are denied.

## IV.    Failure to join necessary parties

To the extent asserted, any argument that plaintiff failed to join necessary parties

must also fail. Several defendants claim that the Rosellis, the transferor of Packard Place,

and other various entities involved in the transaction are necessary parties. By failing to

include them, defendants contend that the Court's disposition may impede these parties',

as well as defendants', ability to protect their interests. This argument was also addressed

previously in *Finley Group v. North Carolina*.

An avoided transfer may be recovered from "(1) the initial transferee of such

transfer or the entity for whose benefit such transfer was made; or (2) any immediate or

mediate transferee of such initial transferee." 11 U.S.C. § 550(a). The Bankruptcy Code

does not dictate which transferee must bear the burden of the avoidance; rather, "[i]t is

clear from the language of 11 U.S.C. § 550 that the [p]laintiff has discretion in his choice

of defendants. *Bakst*, 475 B.R. at 265; *see also Cox v. Grube (In re Grube)*, 500 B.R.

764, 772 (Bankr. C.D. Ill. 2013) ("It is the trustee's option whom to sue for recovery."

(citing *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr. Co.)*, 874 F.2d

1186, 1194 (7th Cir.1989))). To maintain an avoidance action, a plaintiff "need only

name as a defendant one of the persons or entities potentially liable for recovery under §

550." *Stiles v. Vaden (In re Bechtold)*, No. 10-30013, 2014 WL 585304, at *6 (Bankr.

W.D.N.C. Feb. 14, 2014) (citing *Grube*, 500 B.R. at 772).  Because plaintiff has met this

burden of naming one potential entity liable for recovery, defendants' motions to dismiss

for failure to join a necessary party are denied.

### V.    Initial Transferee

Defendants and third-party defendants next attempt to pin the legal designation of

initial transferee for the Packard Place transfers on one another in a game of hot potato,

each attempting not to get burned with being strictly liable under 11 U.S.C. § 550.

Essentially, each asserts that another entity is the initial transferee and the defenses

available to mediate and intermediate transferees bar plaintiff's recovery against them.

"The term 'initial transferee' is not defined in the Bankruptcy Code." *Bowers v.

Atlanta Motor Speedway, Inc. (In re Se. Hotel Props Ltd. P'ship)*, 99 F.3d 151, 154 (4th

Cir. 1996).  Yet, as explained by controlling Circuit precedent, "a party cannot be an

initial transferee if he is a 'mere conduit' for the party who had a direct business

relationship with the debtor."  *Id*. at 155 (quoting *Lowry v. Sec. Pac. Bus. Credit, Inc. (In

re Columbia Data Prods.)*, 892 F.2d 26, 28 (4th Cir.1989)).  Put differently, "the term

transferee as used in § 550 must mean something different from possessor or holder or

agent."  *Id*. at 156 (citations and quotation marks omitted); *see also Bonded Fin. Servs.,

Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988) ("When A gives a check to

B as agent for C, then C is the 'initial transferee'; the agent may be disregarded.").

Instead, "to constitute the 'initial transferee' of property under § 550(a) of the Bankruptcy

Code, a person or entity must have exercised legal dominion and control over the

property." *Bowers*, 99 F.3d at 156. An initial transferee is the first party with "the right to put the money to one's own purposes." *Bonded*, 838 F.2d at 893.

At this early stage in the litigation, it is impossible to determine which party is the initial transferee. As pled, the funds at issue were placed into what has been described as the "KLG Trust Account" and then disbursed to the various defendant-entities, and the Court must accept these allegations as true. Again, for defendants to prevail, the Court would have to engage in impermissible fact finding to determine the precise nature of the KLG Trust Account, whether an escrow agreement existed, and who exercised actual dominion and control over the funds. Beyond that, the Court is unable to make any findings regarding the KLG Trust Account at this time as numerous versions of the trust agreement have been referenced, some unsigned.

In short, the record is not yet sufficiently developed to decide which entity held the first right to put the money to their own purpose, and the motions to dismiss on this issue must therefore be denied.

### VI.    Jurisdiction over third-party defendants

Defendants have asserted a variety of third-party causes of action against other parties involved in the Packard Place transaction sounding in common law and contractual indemnity, contribution, breach of contract, conspiracy, fraud, unjust enrichment, and violations of N.C.G.S. § 75-1.1 *et seq*. In short, defendants believe if they defrauded the debtor, then they were similarly defrauded by the third-party defendants.

The third-party defendants move to dismiss those complaints, on the one hand joining in the attack on the confirmed plan made by defendants while on the other hand

asserting this Court lacks subject matter jurisdiction over the third-party causes of action.

As for jurisdiction, defendants contend the Court's related to jurisdiction encompasses

these indemnity-like claims.  Alternatively, defendants argue that this bankruptcy court

could exercise supplemental jurisdiction over the claims because of the overlapping

issues and facts presented by the primary claims.  And, as a third alternative, defendants

222 South Church Street, LLC and Novare Group Holdings, LLC (the 222 South Church

defendants) claim that diversity of citizenship exists.  If this Court finds related to and

supplemental jurisdiction lacking, the aforementioned defendants request to sever their

claims from the others and to proceed in District Court under diversity jurisdiction.

To provide some context, "[t]he jurisdiction of the bankruptcy courts, like that of

other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*,

514 U.S. 300, 307 (1995).  Title 28 U.S.C. § 1334(b) defines bankruptcy jurisdiction and

provides that "the district courts shall have original but not exclusive jurisdiction of all

civil proceedings" arising under, arising in, or related to cases under the Bankruptcy

Code.

### a. Arising under and arising in jurisdiction

The distinctions in arising under and arising in jurisdictions can be summarized as

follows.  "A proceeding is one 'arising under' Title 11 when it invokes a 'substantive

right created by the Bankruptcy Code.'" *In re Tate*, 253 B.R. 653, 661-62 (Bankr.

W.D.N.C. 2000) (citations omitted).  "Proceedings 'arising in' Title 11 cases are those

which are not based on any right expressly created by Title 11, but nevertheless, would

have no existence outside of the bankruptcy" such as "administrative matters, orders to

turn over estate property, determination of the extent or priority of liens, contempt

matters, and actions to recover postpetition accounts." *Id*. at 662 (Bankr. W.D.N.C.

2000) (citations and quotation marks omitted).

The Bankruptcy Code does not expressly provide a cause of action for either

indemnity or contribution, and "[a]ny such cause of action arising under the Code would

have to be implied." Edward M. Fox & James Gadsden, *Rights of Indemnification and*

*Contribution Among Persons Liable for Fraudulent Conveyances*, 23 Seton Hall L. Rev.

1600, 1603 (1993) [hereinafter Fox & Gadsden].  Courts have generally declined to find

an implied right to indemnity or contribution under the Code.  *E.g., Walker v. Cadle*

*Co.(In re Walker)*, 51 F.3d 562, 566-67 (5th Cir. 1995) ("We, as other courts examining

this issue, agree, and, consequently, we find no implied  right of contribution in the

Bankruptcy Code." (citing *Wieboldt Stores, Inc. v. Schottenstein*, 111 B.R. 162, 168

(N.D. Ill. 1990); *Barber v. Riverside Int'l Trucks, Inc. (In re Pearson)*, 142 B.R. 831, 848

(Bankr. C.D. Ill. 1992); *Neill v. Borreson (In re John Peterson Motors)*, 56 B.R. 588, 591

n. 5 (Bankr. D. Minn. 1986)); Fox & Gadsden, at 1602-03.

Thus, the third-party claims for what are essentially indemnity and contribution

are not based on any right created by the Bankruptcy Code for arising under jurisdiction.

Moreover, this Court does not have arising in jurisdiction over the third-party litigation as

these claims could exist outside of the bankruptcy and could be brought in state court.

Therefore, for jurisdiction to exist under section 1334, the litigation must be undergirded

by the Court's related to jurisdiction.

### b.  Related to jurisdiction

"In this circuit, a civil case is related to bankruptcy if 'the outcome of [the civil]

proceeding could conceivably have any effect on the estate being administered in

bankruptcy.'" *New Horizon of NY LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000)

(citations omitted).  "[A] related to case need not necessarily be against the debtor or his

property." *Id.*  However, a bankruptcy court's related to jurisdiction is not limitless.

*Celotex*, 514 U.S. at 308 (citing, *inter alia*, *Pacor, Inc.  v. Higgins*, 743 F.2d 984, 994 (3d

Cir. 1984)).  "[T]he 'mere fact that there may be common issues of fact between a civil

proceeding and a controversy involving a bankruptcy estate does not bring the matter

within the scope of [1334(b)].'"  *New Horizon*, 231 F.3d at 151 (quoting *Pacor*, 743 F.2d

at 994).  "As several courts have observed, a vast majority of cases find that related to

jurisdiction is lacking in connection with third-party complaints." *Walker*, 51 F.3d at 569

(citations and quotation marks omitted); *Official Comm. Of Unsecured Creditors on*

*Behalf of Summit Airlines v. Ganz* (*In re Summit Airlines, Inc.)*, 160 B.R. 911, 922

(Bankr. E.D. Pa. 1993) ("In assessing whether the third-party complaint in issue has an

'effect upon' the Debtor's bankruptcy, this court has reviewed numerous cases which

applied this test in connection with third-party complaints.  A review of such cases

reveals that a vast majority of the cases find that 'related to' jurisdiction is lacking in

connection with third-party complaints, and those that do not are factually

distinguishable." (citations omitted)).

Here, defendants' third-party claims involve litigation between non-debtors.

Even assuming that defendants prevail on every claim asserted against the other parties

involved in the Packard Place transaction, including indemnity, fraud, and the like, there

would be no conceivable effect on the administration of the bankruptcy estate.  The

outcome of the third-party claims will merely determine which party ultimately bears the

burden of the primary fraudulent transfer actions and will not "alter the debtor's rights,

liabilities, options, or freedom of action (positively or negatively)" or affect "the handling and administration of the bankrupt estate." *New Horizon*, 231 F.3d at 151 (quoting *Celotex*, 514 U.S. at 308, n.6); *see also Walker*, 51 F.3d at 569 (noting "[i]t is difficult to imagine" that requiring a third-party to pay contribution to a defendant for violations of 11 U.S.C. § 362 "could somehow affect the estate"); *see also Official Creditors' Comm. of Prods. Liab. And Pers. Injury Claimants v. Int't Ins. Co. (In re Pettibone Corp.)*, 135 B.R. 847, 850-51 (Bankr. N.D. Ill. 1992) (holding related to jurisdiction did not exist over third-party claims where "[t]he creditors and the Plan in the underlying bankruptcy procedure will remain unaffected" in "a dispute between two non-debtors which will merely determine which party will ultimately be responsible in the event that [the defendant] is found liable in the underlying Adversary actions.").

Even so, defendants point to a pair of cases in which courts have found related to jurisdiction over third-party claims and assert that we should follow suit. *See First Citizens Bank & Trust Co. v. Flowers (In re Rainbow Sec., Inc.)*, 173 B.R. 508 (Bankr. M.D.N.C. 1994); *Joesph v. Cutting/Sewing Room Equip. Co. (In re Wilcox & Gibbs, Inc.)*, 314 B.R. 541 (Bankr. D. Del. 2004).  These cases are easily distinguishable.  Both involved preference actions, not fraudulent transfers as here.  As previously stated, recovery on a preference is made from a creditor and can give rise to subsequent claims against the estate under 11 U.S.C. § 502(h).  A 502(h) claim could potentially have an effect on the estate not otherwise present when recovery is had against a fraudulent transferee.  Furthermore, the cited cases are not binding on this Court.

The Court therefore lacks related to jurisdiction over defendants' third-party claims.

### c. Supplemental jurisdiction

Defendants next argues this Court may exercise supplemental jurisdiction over the third-party claims pursuant to 28 U.S.C. § 1367, which provides "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

"The Fourth Circuit has not directly spoken to whether a bankruptcy court can exercise pendent jurisdiction and hear non-federal claims raised in a bankruptcy adversary proceeding." *Cooper v. BB Syndication Servs., Inc. (In re 222 S. Caldwell St., Ltd. P'ship)*, 409 B.R. 770, 786 (Bankr. W.D.N.C. 2009), amended (June 22, 2009). A number of courts, including this one, have held that the referral of matters from the district courts to the bankruptcy courts under 28 U.S.C § 157(a) empower a bankruptcy court to exercise supplemental jurisdiction. *Id*. (citations omitted). Admittedly, this Court's decision on this issue was prior to *Stern v. Marshall*, 131 S. Ct. 2594 (2011), which has cast a great deal of uncertainty over bankruptcy courts' power to adjudicate certain claim and enter final orders.

The distinctions drawn by *Stern* and its progeny are not, however, all that relevant to the current question of supplemental jurisdiction given Judge Whitney's order that "the reference will be withdrawn once the District Court receives a Certificate of readiness for trial from the bankruptcy court." Docket No. 3:15-cv-00029-FDW. All parties involved in the Packard Place transaction agree this order applies over all the related, and now consolidated, adversary proceedings. Meaning, we are not truly tasked with determining

whether this bankruptcy court may exercise supplemental jurisdiction.  Rather, the question posed should be whether the District Court, in its discretion, will exercise its power to hear the third-party claims.  Undoubtedly, this bankruptcy court is no position to make that determination.  But, pursuant to the District Court's order to make recommendations on dispositive motions, this bankruptcy court suggests that the District Court decline to exercise its supplemental jurisdiction.

When weighing whether to exercise supplemental jurisdiction, courts generally engage in a three-part inquiry.  First, "the federal claim must be substantial." *222 S. Caldwell*, 409 B.R. at 786 (citing *Dechert Price & Rhoads v. Direct Satellite Communications (In re Direct Satellite Commc'ns)*, 91 B.R. 5, 6 (Bankr. E.D. Pa. 1988)).  "Second, the pendent claim must derive from a common nucleus of operative fact, and must be of the sort normally triable in the same proceeding as the federal claim." *Id.* (citations and quotation marks omitted).  "Finally, whether a court exercises pendent jurisdiction is discretionary and affected by weighing the elements of 'judicial economy, convenience, and fairness of litigants.'" *Id.* (citation omitted).

Here, the claim is a core bankruptcy proceeding and is a substantial federal claim.  While the pendent claims derive from the same transaction and generally involve a common nucleus of operative fact, the third-party claims for indemnity, fraud, and Unfair and Deceptive Practices would require significant discovery beyond that needed to prove plaintiff's claims for fraudulent transfers.  Finally, and most indicative of this Court's recommendation, notions of judicial economy, convenience, and fairness to the parties weigh heavily in favor of declining to exercise supplemental jurisdiction.

In all likelihood, attempting to adjudicate the third-party claims concurrently with the primary actions for fraudulent transfers will result in a hopeless amount of expense and confusion in an exercise that may be all of for naught.  Turning first to expense, based on the arguments presented, it is likely that the third-party defendants will fight the plaintiff in this case just as zealously as they will fight the defendants.  After all, the third-party defendants can escape liability by defeating plaintiff's primary claims.  By adding these third-party claims into the fray, plaintiff will be forced to take and respond to discovery and dispositive motions from twice the number of parties, only further reducing the funds available to creditors, the real parties in interest.

So far as the bankruptcy case is concerned, there appears to be no interest in judicial economy that would be furthered by adding these third-party claims.  As already discussed, the outcome of the third-party litigation will have no bearing on the bankruptcy estate, the execution of the plan, or on the debtor's rights or liabilities.  Cast in the light of the effect on the bankruptcy estate and the purposes of the Code, it is telling that very few bankruptcy courts have allowed these types of cases to proceed in conjunction with actions to avoid fraudulent transfers.

As the transcript from the April 20, 2015 hearing will indicate, the breadth of the parties' arguments and their inherently opposite interests pose a great risk of confusion at trial.  On the one hand, the defendants and third-party defendants are united against the plaintiff; but, on the other hand, each defendant and each third-party defendant holds a diametrically opposed position, attempting to avoid liability by pointing the finger at another litigant.  If the hearing on these motions to dismiss is any indicator of what a trial on these matters would look like, by adding third-party claims, it will be nearly

impossible to organize and marshal the parties and their arguments to present the issues

in a coherent fashion.  Furthermore, the parties have demanded a jury trial.  Asking a

panel of lay people to pass judgment on some of the finer nuances of the Bankruptcy

Code that will arise in the primary lawsuits is already a daunting prospect.  Doubling the

parties, the issues, and the complications by permitting the third-party defendants to

address the jury is likely a bridge too far.

This risk of greatly increasing the litigation costs of the bankruptcy while

significantly complicating the issues for trial may be entirely needless.  In this bankruptcy

court's opinion, the third-party claims are not yet ripe.  Until the transfers are avoided

and the funds turned over, it would appear that defendants have no claim against the

third-parties.  Forcing plaintiff, and creditors, through the exercise and expense that

would follow from allowing the third-party claims to continue appears to be unfair and

contrary to the spirit and purpose of the Bankruptcy Code, especially when these claims

are not now and may never be ripe.  Consequently, this Court recommends that

supplemental jurisdiction not be extended to the third-party claims.

### d.  Diversity jurisdiction

As a last gasp to create jurisdiction over the third-party claims, the 222 South

Church defendants claim that diversity of citizenship exists and request to sever their

claims from the others and to proceed in District Court.  Diversity jurisdiction typically

has no bearing on actions brought in bankruptcy court.

This Court does not believe the 222 South Church defendants' claims are ripe.

However, if the District Court believes otherwise, should the 222 South Church

defendants wish to proceed under diversity jurisdiction, it is recommended that the

District Court require them to file their claims in District Court rather than sever this action.

Because this bankruptcy court lacks subject matter jurisdiction and because the extension of supplemental jurisdiction to the third-party claims appears to be unwarranted, it is recommended that the third-party complaints be dismissed.

### VII.    Arguments raised by the City of Clare, Michigan

The City of Clare, Michigan, a party not involved in the Packard Place transaction, joined in many of the arguments already addressed in the other defendants' motions to dismiss.  In addition, Clare moved for summary judgment on several unrelated issues.  These include that plaintiff's claims were not raised within the applicable statute of limitations, that Michigan law must be applied, and that plaintiff has not stated a claim under the Uniform Fraudulent Transfer Act.

Unlike a motion to dismiss, when faced with a motion for summary judgment the Court determines whether the moving party deserves judgment as a matter of law and "must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion."  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations omitted).[13]

Plaintiff seeks to recover funds under 11 U.S.C. §§ 544(b), 548, 550 and the North Carolina Fraudulent Transfer Act paid by debtor to the city for utilities and taxes

---

[13] Despite moving for summary judgment, Clare appears to switch between the summary judgment standard and the 12(b)(6) standard.  Out an abundance of caution, the Court considered Clare's arguments under both the 12(b)(6) and summary judgment standards and found the result should be the same.

related to property personally owned by Mr. Roselli.  These payments began in August

2010 and ended in October 2012 and amounted to approximately $22,500.

Section 548 of the Bankruptcy Code permits recovery of an avoidable transfer

"that was made or incurred on or within 2 years before the date of the filing of the

petition."  According to Clare, because the petition date in this case is October 12, 2012,

plaintiff may not recover any transfer made beyond two years of that date, October 10,

2010, under section 548.  This is true.  The city's motion to dismiss the section 548 claim

is allowed as to the three transfers made prior to October 10, 2010.[14]  However, this does

not prejudice plaintiff's claims against the same three transfers under section 544.

Bankruptcy Code section 544(b) permits avoidance pursuant to state law

remedies.  North Carolina General Statute § 39-23.9 requires claims for avoidance be

brought within four years of the transfer.  The city asserts that because plaintiff filed its

complaint on September 18, 2014, plaintiff may not recover any transfer made beyond

four years of that date, September 18, 2010, under the North Carolina Fraudulent

Transfer Act.  From a review of the record, these transfers account for less than $5000 of

the total funds sought.

While it may be true that its complaint was filed more than four years after some

of the transfers at issue, plaintiff is not time barred.  For actions brought under section

544, subsection 546(a)(1)(A) provides a two year limitation period after the entry of the

order for relief and "extends the time to pursue an avoidance action under section 544 so

long as the underlying state law claim had not expired as of the date the bankruptcy case

was filed." *Furr v. United States Dep't of Treasury (In re Pharm. Distrib. Servs., Inc.)*,

---

[14] These payments are alleged to have been made on August 3, 2010 ($430.67), August
12, 2010 ($4186.38), and August 19, 2010 ($211.31).

455 B.R. 817, 823 (Bankr. S.D. Fla. 2011) (citations omitted); *see also* 5 COLLIER ON

BANKRUPTCY ¶ 546.02[1][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("If

the state law limitations period governing a fraudulent transfer action has not expired at

the commencement of a bankruptcy case, the trustee may bring the action pursuant to

section 544(b), provided that it is commenced within the section 546(a) limitations

period.").  Because the bankruptcy case was filed within the four-year statute of

limitations under state law and the adversary proceeding was filed within two years of the

petition date, plaintiff's claim is timely filed.  Clare's motion to dismiss/motion for

summary judgment is thus denied on this issue.

Clare next likens plaintiff's adversary proceeding to a request for a tax refund and

asserts that Michigan law must therefore be applied rather than the Bankruptcy Code or

the North Carolina Fraudulent Transfer Act.[15]  This argument was previously made and

implicitly overruled in *Finley Group v. North Carolina*.

This action can hardly be equated to a request for a refund.  As pled, we have a

transfer made fraudulently by a debtor for the benefit of a third party.  This is not an

effort by a taxpayer to obtain a refund.  The action appears to be rightly framed as a suit

under Code sections 544 and 548 to recover fraudulent transfers.

Supremacy Clause implications related to actions brought under section 548

aside, Clare's attempt to create a choice of law dispute over plaintiff's section 544 action

is unavailing as both Michigan and North Carolina have adopted the Uniform Fraudulent

Transfer Act.  *Compare* Mich. Comp. Laws § 566.42 ("This act shall be known and may

be cited as the 'uniform fraudulent transfer act'."), *and* Mich. Comp. Laws § 566.41

---

[15] Clare asserted the statute of limitations defense under North Carolina law applies in its
first argument but now relies on Michigan law.

("This act shall be applied and construed to effectuate its general purpose to make uniform the law of fraudulent conveyance among the states enacting it."), *with* N.C.G.S. § 39-23.12 ("This Article may be cited as the Uniform Fraudulent Transfer Act."), *and* N.C.G.S. § 39-23.11 ("This act shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Article among states enacting it.").

The city finally argues in the alternative that if North Carolina law applies, it is not liable under the Uniform Fraudulent Transfer Act because it is not a creditor. Apparently, the city reads N.C.G.S. § 39-23.4 to mean the entity that received the transfer must be a creditor. Because the city never filed a proof of claim in this case, was unaware of the bankruptcy, and is not a creditor in this bankruptcy, the city asserts that the plaintiff cannot recover fraudulent transfers made to it.

The city misreads section 39-23.4, which provides, "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if . . . ." In this action, the term creditor refers to the liquidating agent, not the city. The liquidating agent acts to recover monies for creditors, which are the entities defrauded. The city's reading of the statute would limit its scope to preferential payments to creditors, illogically protecting those who convey property for no consideration. Under the city's application of the law, if a father conveyed his home to his son to keep it out of reach of his creditors, the transfer would be shielded so long as the father did not owe the son a debt. That is not the law.

35

At this early stage in the proceeding, a decision on summary judgment would be inappropriate, and plaintiff has asserted claims consistent with the *Iqbal* and *Twombly* pleading requirements.  With the exception of the three claims subject to the section 548 time bar previously discussed, the city's motion must be denied.

---

**Based on the foregoing, it is ordered or, to the extent necessary, recommended:**

| Case | Matter before the Court | Disposition |
|---|---|---|
| 14-3145 | Defendant's Motion to Dismiss Complaint or Alternatively for Order Finding that the April 20, 2013 Order Confirming Modified Plan in Void (Doc. 7) | Denied |
| 14-3252 | Defendant's Motion for Summary Judgment (Docs. 9, 10) | Denied (in part), Allowed as to claim brought under 11 U.S.C. § 548 to recover payments alleged to have been made on 8/3/10, 8/12/10, and 8/19/10. |
| 14-3254 | Third-Party Defendants Anne L. Bradley and Anne L. Bradley CPA, PA's Motion to Dismiss, or in the alternative, Motion for Permissive Abstention (Doc. 27) | Recommend Allow |
| | Plaintiff's Motion to Consolidate Discovery, Pre-Trial Filings, and Dispositive Motions in Adversary Proceedings (Doc. 29) | Allowed |
| | Third-Party Defendants Anne L. Bradley and Anne L. Bradley CPA, PA's Motion to Determine Whether Proceedings are Core or Otherwise Subject to Entry of Final Orders by this Court (Doc. 30) | Denied as Moot |
| | Third-Party Defendants Packard Place Properties, LLC's, Daniel J. Roselli's and Sara G. Roselli's Motion to Dismiss the Third-Party Complaint (Docs. 32, 34) | Recommend Allow |
| | Defendant's Amended Motion to Dismiss Complaint or Alternatively for Order Finding that the April 29, 2013 Order Confirming Modified Plan is Void (Doc. 8) | Denied |
| | Third-Party Defendants 222 South Church Street, LLC's and Novare Group Holdings, LLC's Motion to Determine Whether Proceedings are Core or Otherwise Subject to Entry of Final Orders by this Court (Doc. 21) | Denied as Moot |

| 14-3259 | Defendant's Motion to Dismiss Complaint or Alternatively for Order Finding that the April 29, 2013 Order Confirming Modified Plan is Void (Doc. 4) | Denied |
|---|---|---|
| 14-3261 | Defendant CB Richard Ellis, Inc.'s Motion to Dismiss (Doc. 8) | Denied |
| | Defendant 222 South Church Street's Motion to Determine Whether Proceedings are Core or Otherwise Subject to Entry of Final Orders by this Court (Doc. 17) | Denied as Moot |
| | Plaintiff's Motion to Consolidate Discovery, Pre-Trial Filings, and Dispositive Motions in Adversary Proceedings (Doc. 22) | Allowed |
| 14-3262 | Defendant's Motion to Dismiss (Doc. 9) | Denied |
| | 222 South Church Street's Motion by to Intervene (Doc. 13) | Denied as Moot |
| | Plaintiff's Motion to Consolidate Discovery, Pre-Trial Flings, and Dispositive Motions in Adversary Proceedings (19) | Allowed |
| 14-3263 | Third-Party Defendants Packard Place Properties, LLC's, Daniel J. Roselli's and Sara G. Roselli's Motion to Dismiss the Third-Party Complaint (Doc. 27) | Recommend Allow |
| | Defendants 222 South Church Street's and Novare Group Holdings, LLC's Motion to Determine Whether Proceedings are Core or Otherwise Subject to Entry of Final Orders by this Court (Doc. 35) | Denied as Moot |
| | Third-Party Defendants Anne L. Bradley and Anne L. Bradley CPA, PA's Motion to Dismiss, or in the alternative, Motion for Permissive Abstention (Docs. 43, 45) | Recommend Allow |
| | Plaintiff's Motion to Consolidate Discovery, Pre-Trial Flings, and Dispositive Motions in Adversary Proceedings (Doc. 48) | Allowed |
| | Third-Party Defendants Anne L. Bradley and Anne L. Bradley CPA, PA's Motion to Determine Whether Proceedings are Core or Otherwise Subject to Entry of Final Orders by this Court (Doc. 49) | Denied as Moot |
| 14-3265 | Plaintiff's Motion to Consolidate Discovery, Pre-Trial Flings, and Dispositive Motions in Adversary Proceedings (Doc. 11) | Allowed |

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court